Dale M. Cendali
Mary Mazzello
Alexandra Cunningham
Christopher Washington (*admission application forthcoming*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-6460
dale.cendali@kirkland.com
mary.mazzello@kirkland.com
alexandra.cunningham@kirkland.com
christopher.washington@kirkland.com

*Attorneys for Sesame Workshop*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SESAME WORKSHOP,<br><br>       Plaintiff,<br><br>    v.<br><br>SEAWORLD PARKS & ENTERTAINMENT, INC., and UNITED PARKS & RESORTS INC. F/K/A SEAWORLD ENTERTAINMENT, INC.<br><br>       Defendants. | Case No.: 1:26-cv-2047<br><br>ECF Case |

**PLAINTIFF SESAME WORKSHOP'S OPPOSITION TO DEFENDANTS SEAWORLD PARKS & ENTERTAINMENT, INC. AND UNITED PARKS & RESORTS INC.'S**
<u>**MOTION TO DISMISS**</u>

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

FACTUAL BACKGROUND............................................................................................ 3

      A.    Sesame and Its Relationship with SeaWorld.......................................... 3

      B.    SeaWorld's Intentional Efforts to Harm Sesame .................................. 3

ARGUMENT...................................................................................................................... 5

      I.    LEGAL STANDARD ............................................................................... 5

      II.    SESAME SUCCESSFULLY PLED UNFAIR COMPETITION BY SEAWORLD ............................................................................................. 5

          A.    Sesame Stated a Claim for Unfair Competition Under Two Theories................................................................................................. 5

          B.    SeaWorld's Argument that Sesame Did Not Allege the Elements of Unfair Competition Fails ....................................................... 8

          C.    Sesame's Unfair Competition Claim Is Not Duplicative of Its Breach Claim........................................................................................ 11

          D.    The Agreement's Damages Clause Does Not Support Dismissal ....... 15

      III.    SESAME SUCCESSFULLY PLED BREACH OF THE IMPLIED COVENANT............................................................................................. 15

      IV.    SESAME SUCCESSFULLY PLED PUNITIVE DAMAGES........................ 20

      V.    UNITED IS A PROPER DEFENDANT FOR ALL CLAIMS ....................... 23

CONCLUSION ................................................................................................................. 25

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*24/7 Records, Inc. v. Sheridan Square Entertainment, LLC*,
566 F. Supp. 2d 305 (S.D.N.Y. 2008).................................................................................15, 21

*Ace Am. Ins. Co. v. Cons. Edison Co. of N.Y., Inc.*,
190 N.Y.S.3d 667, 2023 WL 4191164 (N.Y. Sup. Ct. 2023)....................................................16

*AEA Middle Market Debt Funding LLC v. Marblegate Asset Man., LLC*,
214 A.D.3d 111 (N.Y. App. Div. 2023) ..............................................................................16, 19

*Airship Indus. (UK) Ltd. v. Goodyear Tire & Rubber Co.*,
643 F. Supp. 754 (S.D.N.Y. 1986) ........................................................................................8, 9

*Albemarle Theater, Inc. v. Bayberry Realty Corp.*,
27 A.D.2d 172 (N.Y. App. Div. 1967) .................................................................................12, 13

*Allstate Life Insurance Company v. Mota*,
21-cv-908 (LJL), 2021 WL 5166819 (S.D.N.Y. Nov. 5, 2021) ...............................................11

*Apotex Corp. v. Hospira Healthcare India Private Ltd.*,
18-CV-4903 (JMF), 2019 WL 3066328 (S.D.N.Y. July 12, 2019)....................................13, 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).....................................................................................................................5

*Astroworks, Inc. v. Astroexhibit, Inc.*,
257 F.Supp.2d 609 (S.D.N.Y. 2003)............................................................................................6

*AXA Mediterranean Holding, S.P. v. ING Insurance International*,
No. 652110/10, 2011 WL 10915622 (N.Y. Sup. Ct. 2011)......................................................14

*Bard-Parker Co. v. Crescent Mfg. Co.*,
20 N.Y.S.2d 759 (N.Y. Sup. Ct. 1940) ...............................................................................11, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).....................................................................................................................5

*Bitter v. Renzo*,
971 N.Y.S. 2d 69, 2012 WL 7856951 (N.Y. Sup. Ct. 2012)....................................................25

*Brown Bros. Electrical Constractors v. Beam Construction Corp.*,
41 N.Y.2d 397 (N.Y. App. Ct. 1977)........................................................................................25

*Carvel Corp. v. Noonan*,
   350 F.3d 6 (2d Cir. 2003)............................................................................3, 11, 21

*County Waste & Recycling Service, Inc. v. Twin Bridges Waste & Recycling, LLC*,
   150 N.Y.S.3d 893, 2021 WL 3611979 (N.Y. Sup. Aug. 13, 2021)...........................................6

*Don King Prods., Inc. v. Douglas*,
   742 F. Supp. 741 (S.D.N.Y. 1990) .....................................................................16, 17, 18, 20

*Dormitory Authority of the State of New York v. Samson Construction Co.*,
   30 N.Y.3d 704 (N.Y. Ct. App. 2018)......................................................................14

*Electrolux Corp. v. Val-Worth, Inc.*,
   6 N.Y.2d 556 (1959) ...................................................................................... *passim*

*Elmhurst Dairy, Inc. v. Bartlett Dairy, Inc.*,
   97 A.D.3d 781 (N.Y. App. Div. 2012) ...........................................................16, 24

*Express Gold Cash, Inc. v. Beyond 79, LLC*,
   1:18-cv-00837 EAW, 2019 WL 4394567 (W.D.N.Y. Sept. 13, 2019) .............................11, 20

*Fine Foods Intl. (N.Y.) v. N.A. Fine Foods, Inc.*,
   No. 99-CV-1062 (ILG), 1999 WL 1288681 (E.D.N.Y. Nov. 12, 1999) ...............................8, 9

*Getty Petroleum Corp. v. Island Transp. Corp.*,
   878 F.2d 650 (2d Cir. 1989)...........................................................................20, 21, 22

*Ghost in the Machine Inc. v. Planned Parenthood Fed'n of Am., Inc.*,
   22-CV-9270 (VSB), 2025 WL 252913 (S.D.N.Y. Jan. 21, 2025)...........................................7

*Hi Bar Cap. LLC v. Getter*,
   22-CV-1743 (ENV)(RML), 2025 WL 2989120 (Oct. 12, 2025) ...........................................26

*Horsehead Indus., Inc. v. Metallgesellschaft AG*,
   239 A.D.2d 171 (N.Y. App. Div. 1997) ...............................................................24

*Int'l News Serv. v. Associated Press*,
   248 U.S. 215 (1918)...............................................................................................9

*IS Chrystie Mgmt. LLC v. ADP, LLC*,
   205 A.D.3d 418 (2022)............................................................................................15

*JD Produce Maspeth LLC v. State Farm Fire & Cas. Co*,
   23-CV-6637 (NGG)(LB), 2024 WL 5630618 (E.D.N.Y. Nov. 19, 2024) .............................23

*Kathleen Foley, Inc. v. Gulf Oil Corp.*,
   12 A.D.2d 644 (N.Y. Sup. Ct. 1960) ...................................................................15

*KT Grp. v. NCR Corp.*,
    412 F. Supp. 3d 305 (S.D.N.Y. 2013)...................................................................................12

*LinkCo, Inc. v. Fujitsu Ltd.*,
    230 F. Supp. 2d 492 (S.D.N.Y. 2002)...............................................................................5, 6

*Lively v. Wayfarer Studios LLC*,
    24-cv-10049, 2026 WL 905447 (S.D.N.Y. Apr. 2, 2026) .......................................................15

*Mobius Man. Sys's., Inc. v. Fourth Dimension Software, Inc.*,
    880 F.Supp. 1005 (S.D.N.Y. 1994) .............................................................................19, 21, 25

*My Mavens, LLC v. Grubhub, Inc.*,
    20 Civ. 4657 (PGG), 2023 WL 5237519 (S.D.N.Y. Aug. 14, 2023) .....................................14

*National Basketball Ass'n v. Motorola, Inc.*,
    105 F.3d 841 (2d Cir. 1997)......................................................................................................6

*New York Racing Ass'n v. Nassau Reg'l Off-Track Betting Corp.*,
    909 N.Y.S.2d 866 (Sup. Ct. 2010)...........................................................................................10

*New York Univ. v. Continental Ins. Co.*,
    87 N.Y.2d 308 (1995) .................................................................................................20, 21, 23

*Nielsen v. Rabin*,
    746 F.3d 58 (2d Cir. 2014)........................................................................................................5

*OFSI Fund II, LLC v. Canadian Imperial Bank of Commerce*,
    No. 602353/05, , 2009 WL 6019496 (N.Y. Sup. Ct. 2009)......................................................14

*Patriarch Partners Agency Servs., LLC v. Zohar CDO 2003-I, Ltd.*,
    16-CV-4488 (VM), 2025 WL 2592224 (S.D.N.Y. Sept. 8, 2025) ....................................15, 23

*Powerbox (USA), Inc. v. Honeywell Int., Inc.*,
    Case No. 20-cv-3638-VM, 2020 WL 6151491 (S.D.N.Y. Oct. 20, 2020) ..............................24

*Prudent Publishing Co. v. Myron Manufacturing Corp.*,
    722 F. Supp. 17 (S.D.N.Y. 1989) .............................................................................6, 8, 9, 10

*Red Mountain Medical Holdings, Inc. v. Brill*,
    563 F. Supp. 3d 159 (S.D.N.Y. 2021).......................................................................................9

*Reed Const. Data Inc. v. McGraw-Hill Companies, Inc.*,
    745 F. Supp. 2d 343 (S.D.N.Y. 2010).....................................................................................13

*Rivera v. Home Depot USA, Inc.*,
    776 Fed. Appx. 4 (2d. Cir. 2019)............................................................................................23

*Roy Export Co. Establishment v. Columbia Broad. Sys., Inc.*,
  672 F.2d 1095 (2d Cir. 1982)................................................................................5, 9

*Saggio v. Select Portfolio Serv., Inc.*,
  No. 15-cv-04300 (JG)(RER), 2015 WL 6760132 (E.D.N.Y. Nov. 5, 2015)...........................18

*Sidney Frank Importing Co. v. Beam Inc.*,
  998 F. Supp.2d 193 (S.D.N.Y. 2014)...........................................................................10

*Spinelli v. NFL*,
  903 F.3d 185 (2d Cir. 2018)......................................................................................18

*Taco, Inc. v. Am. Home Assurance Co.*,
  24-CV-07041 (JAV), 2025 WL 2419707 (S.D.N.Y. Aug. 21, 2025)..............................16, 19

*Trireme Energy Holdings, Inc. v. RWE Renewables Ams., LLC*,
  757 F.Supp.3d 445 (S.D.N.Y. 2024)............................................................................25

*Walker v. Sheldon*,
  10 N.Y.2d 401 (1961) ..............................................................................................20

*Wood v. Lucy, Lady Duff-Gordon*,
  222 N.Y. 88 (N.Y. App. Ct. 1917)............................................................................2, 16

*World Wide Packaging, LLC v. Cargo Cosmetics, LLC*,
  144 N.Y.S.3d 41 (N.Y. App. 2021) ..............................................................................25

*Wrap-N-Pack, Inc. v. Kaye*,
  528 F.Supp.2d 119 (E.D.N.Y. 2007) ............................................................................21

**Rules**

Fed. R. Civ. P. 8...................................................................................................5

Fed. R. Civ. P. 12.................................................................................................5

Fed. R. Civ. P. 15.................................................................................................26

Plaintiff Sesame Workshop ("Sesame" or "Plaintiff") submits this opposition to SeaWorld Parks & Entertainment, Inc. and United Parks & Resorts Inc. f/k/a SeaWorld Entertainment, Inc.'s ("United") (collectively, "SeaWorld" or "Defendants") motion to dismiss, Dkt. 35 ("Mot.").

## PRELIMINARY STATEMENT

This case is about SeaWorld's campaign to punish Sesame for doing nothing more than requiring SeaWorld to pay royalties that a unanimous three-judge arbitration panel held it owed to Sesame. Since that judgment, SeaWorld—Sesame's long-standing exclusive U.S. theme park licensee—has engaged in a multi-year effort to harm Sesame and its customers, in blatant disregard for the rule of law. It closed a Sesame-branded park and attraction, even after consumers purchased tickets, Dkt. 14, Amended Complaint, ("AC") ¶¶95–96; reneged on its promise to open a new park, *id*. ¶7; diverted consumers from a Sesame park to SeaWorld's non-Sesame locations, *id*. ¶¶92–97; sought new IP partners to replace Sesame, *id*. ¶¶98–100; reduced promotional efforts to drive down Sesame's revenue, *id*. ¶¶63, 77; and tarnished Sesame's reputation by falsely suggesting Sesame condoned these closures, *id*. ¶159. SeaWorld has also refused to pay ***any royalties*** to Sesame since September 2025, a period of ***ten months***, *id*. ¶¶10, 49, even though it continues using Sesame's IP, including in connection with its historically most profitable park, Sesame Place Langhorne.

Given SeaWorld's stubborn refusal to pay royalties and deliberate efforts to hurt Sesame and its fans, Sesame initiated this action. SeaWorld responded with a partial motion to dismiss. The motion is a meritless delay tactic, designed to stave off judgment in hopes that Sesame, a not-for-profit dependent on royalties, will be forced to cave to SeaWorld's bullying if SeaWorld continues withholding money and driving down Sesame's profits. Its motion should be denied.

**Unfair Competition:** Contrary to SeaWorld's claim, Sesame adequately alleges unfair competition. *First*, SeaWorld purposefully misused Sesame's goodwill to mislead consumers and divert them from Sesame Place to SeaWorld's other parks in bad-faith retaliation for Sesame

enforcing the arbitration. *Second*, SeaWorld foreclosed Sesame from meaningfully participating in the key theme park marketplace by closing a park with little to no warning and looking for (and finding) replacement partners, all while knowing Sesame could not simply replace SeaWorld given SeaWorld's exclusive licensee status. These theories are not duplicative of the breach of contract claim, which concerns failure to pay royalties, termination fees, or liquidated damages fees, AC ¶¶128, 136–37; unauthorized release of branded materials, *id*. ¶¶129–32; failure to maintain broad accessibility to parks by closing Sesame Place San Diego early and transitioning it to a seasonal park, *id*. ¶133; and failure to provide required documents and hold required meetings, *id*. ¶¶134–35. This conduct is distinct from the ***misleading*** use of Sesame's IP to divert consumers and the purposeful blocking of Sesame's market participation—the heart of unfair competition.

**Breach of the Implied Covenant of Good Faith and Fair Dealing:** SeaWorld's effort to dismiss the implied covenant claim fails as well. As New York courts have recognized for over 100 years, an exclusive licensee has an implied duty to maximize royalty payments to its licensor. *See Wood v. Lucy, Lady Duff-Gordon*, 222 N.Y. 88, 90–92 (N.Y. App. Ct. 1917). Yet SeaWorld instead took actions to spite Sesame and reduce the royalties and termination fees Sesame would receive under the contract. This is quintessential breach of the implied covenant. This claim is not duplicative of breach of contract because it flows from SeaWorld's campaign to subvert the contract's purpose of maximizing royalties—not from breaches of explicit contractual terms.

**Punitive Damages:** SeaWorld's motive in filing this motion to dismiss is clear. It wants to limit not-for-profit Sesame to pure contractual remedies, all while for-profit SeaWorld misuses Sesame's IP, misleads consumers, blocks Sesame from the market, and baselessly withholds millions in royalties. Punitive damages exist to curb just this sort of high handed, morally culpable conduct. SeaWorld's last-ditch argument that Sesame cannot recover punitive damages because

SeaWorld purportedly did not direct its conduct to the public fails. As the Second Circuit explained in *Carvel Corp. v. Noonan*, courts typically apply this public-facing conduct requirement to unfair competition claims only when the claim rests on misrepresentations about the contract itself, which is not the situation here. 350 F.3d 6, 25 (2d Cir. 2003). SeaWorld's myriad egregious acts also include falsely suggesting to the public that Sesame condoned SeaWorld's park closure and using the public's trust in Sesame to divert customers to SeaWorld.

**United:** United is properly named as a defendant because it manifested an intent to be bound by the contract. Indeed, its CEO participated in negotiation of the Agreement and United invoked the Agreement on its own behalf to initiate pre-suit mediation. AC ¶¶114, 126. United cannot claim the Agreement does not apply to it after taking advantage of the contract's benefits, which it admitted to doing at the May 21, 2026 hearing before this Court. Dkt. 36 at 17:1–18:22.

## FACTUAL BACKGROUND

### A. Sesame and Its Relationship with SeaWorld

Sesame is a not-for-profit organization known for its iconic *Sesame Street* brand, offering research-based media and early-childhood education resources to families around the world. AC ¶¶22–23. Sesame helps support this mission through licensing its valuable IP. *Id*. ¶32. SeaWorld has been Sesame's exclusive U.S. theme park licensee for about 45 years, operating standalone Sesame parks and Sesame-themed attractions within SeaWorld properties. *Id*. ¶3. SeaWorld also operates parks with no connection to Sesame. *Id*. ¶33. In 2017, the parties entered their most recent license ("Agreement"), which United's CEO personally participated in negotiating. *Id*. ¶¶38, 126.

### B. SeaWorld's Intentional Efforts to Harm Sesame

Unfortunately, a few years after entering the Agreement, the parties' relationship began to sour. In 2022, SeaWorld refused to pay Sesame royalties owed under the Agreement's plain terms and forced Sesame to arbitrate to secure the payment. *Id*. ¶5. The arbitration panel awarded Sesame

3

the full amount, which Sesame then had to spend years in court to collect. *Id*. ¶¶5, 47. Angered by this result, SeaWorld responded with a bad faith scheme to harm Sesame and its consumers.

*First*, in blatant breach of the Agreement, SeaWorld has not paid any royalties to Sesame for the use of its IP since September 2025—a period now approaching 10 months. *Id*. ¶10. It also refuses to pay termination fees or engage in approval processes as required. *Id*. ¶¶7–8, 90, 106.

*Second*, in plain retaliation for Sesame trying to collect the arbitration judgment, SeaWorld exploited its status as Sesame's exclusive U.S. theme park licensee to largely shut Sesame out of the theme park market and reduce its royalty revenue and exposure. For example, after Sesame initiated a court action in 2023 to collect the arbitration judgment, SeaWorld reneged on its promise to open a third standalone Sesame Place theme park. *Id*. ¶¶5, 7. On the same day that a court ordered SeaWorld to pay the full arbitration award, SeaWorld announced it would shut down the Sesame attraction at SeaWorld San Antonio and replace Sesame with another brand. *Id*. ¶8. On the same day that the clerk of court issued writs of garnishment for the payment owed Sesame, SeaWorld abruptly announced it would close Sesame Place San Diego in one week and move the park to a "seasonal schedule." *Id*. ¶9. United also hosted quarterly earnings calls in which it announced that SeaWorld was having active discussions with various new IP partners. *Id*. ¶100. And SeaWorld started cutting back on promotion of the *Sesame Street* brand. *Id*. ¶160.

*Third*, SeaWorld started misusing Sesame's brand and siphoning its goodwill to mislead consumers, diverting sales from Sesame, and harming Sesame's reputation. The announcement of the abrupt Sesame Place San Diego closure prominently featured the Sesame name and Big Bird image as though Sesame approved the closure. *Id*. ¶¶65, 94. SeaWorld also used the Sesame name and Big Bird image in messaging that encouraged ticket holders for Sesame Place San Diego to attend events at SeaWorld San Diego instead, thus using Sesame's IP to divert consumers from

4

Sesame Place to a non-Sesame park from which Sesame earns no revenue. *Id.* ¶¶91–97. Consumers described the sudden closure as "upsetting" and "very disappointing," with some writing "it 'seems deceptive to shorten the year so much after many have already renewed [annual] memberships.'" *Id.* ¶74. Many Platinum Pass holders, in particular, were upset because they purchased those premium "ticket options" to primarily "engage with *Sesame Street*-themed content." *Id.* ¶95.

## ARGUMENT

### I.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff must allege only a "short and plain statement of the claim showing" its entitlement to relief. Thus, to survive a motion to dismiss, a complaint must merely "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When ruling on a motion to dismiss under Rule 12(b)(6), courts accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).

### II.    SESAME SUCCESSFULLY PLED UNFAIR COMPETITION BY SEAWORLD

#### A.    Sesame Stated a Claim for Unfair Competition Under Two Theories

Unfair competition is an "adaptable and capacious" doctrine. *Roy Export Co. Establishment v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982). Indeed, "New York courts have noted the incalculable variety of illegal practices falling within the unfair competition rubric, calling it a broad and flexible doctrine that. . . encompass[es] any form of commercial immorality." *Id.* (cleaned up) Although "passing off" and "misappropriation" are two common forms, "the Second Circuit has made clear that unfair competition is not limited to the categories of infringement . . . in New York's pattern jury instructions or recognized by courts, but instead encompasses a broad range of conduct." *LinkCo, Inc. v. Fujitsu Ltd.*, 230 F. Supp. 2d 492,

5

500–01 (S.D.N.Y. 2002) (collecting cases).[1] Courts thus recognize unfair competition based on a wide range of misconduct, including "bait and switch" tactics, *Electrolux Corp. v. Val-Worth, Inc.*, 6 N.Y.2d 556, 569–571, (1959); "wrongful exclusion" from a marketplace, *Prudent Pub. Co. v. Myron Mfg. Corp.,* 722 F.Supp. 17, 23 (S.D.N.Y. 1989); and "wrongful tactics" to solicit competitors' customers, *Cnty. Waste & Recycling Serv., Inc. v. Twin Bridges Waste & Recycling, LLC*, 150 N.Y.S.3d 893, 2021 WL 3611979 at *8 (N.Y. Sup. Aug. 13, 2021) (citation omitted).

Although unfair competition "takes many forms," the "pivotal question is always the same: whether the conduct complained of is 'fair or unfair.'" *Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F.Supp.2d 609, 619 (S.D.N.Y. 2003) (citation omitted). The claim also requires "bad faith." *Id.*; *LinkCo*, 230 F.Supp.2d at 500. Sesame adequately alleges both elements—unfair conduct and bad faith—under two theories: (a) ***misappropriation*** of Sesame's goodwill to ***divert*** customers and ***devalue*** Sesame's brand, and (b) ***wrongful exclusion*** of Sesame from the theme park marketplace.

***Misappropriation to Divert and Devalue:*** SeaWorld used Sesame's goodwill, reputation, and brand strength to divert customers from Sesame Place San Diego to SeaWorld San Diego. AC ¶¶92–97, 157. After using Sesame's reputation to lure families into purchasing season passes for ***Sesame-themed*** Sesame Place San Diego (through which Sesame earns revenue and broadens its reputation), SeaWorld abruptly closed the park. *Id*. ¶¶95–97. Then, in messaging that used Sesame's IP and "misleadingly" implied "that Sesame Workshop condoned or supported the closure," SeaWorld gave consumers no choice but to visit SeaWorld's ***non-Sesame themed*** park (for which Sesame earns no revenue). *Id*. ¶¶158–59.[2] SeaWorld thus used Sesame's decades-long

---

[1]    *National Basketball Ass'n v. Motorola, Inc.* held that the Copyright Act preempts the breadth of the unfair competition doctrine when unfair acts are "grounded ***solely*** in the copying of a plaintiff's protected [copyright] expression[.]" 105 F.3d 841, 851–52 (2d Cir. 1997) (emphasis added). This rule is irrelevant here. Sesame does not allege mere copying of copyrightable expression; it alleges misleading use of its brand/goodwill and willful market exclusion.

[2]    For Two-Park Season Passes and Platinum Passes in California, Sesame receives a portion of revenue split with SeaWorld based on attendance trends at Sesame Place locations. AC ¶96. Because Sesame Place San Diego was

brand and reputation investments to divert consumers from a Sesame park to non-Sesame parks.

Such conduct is classic unfair competition. In *Electrolux*, for example, the plaintiff adequately alleged misappropriation where defendants drew in customers using their interest in plaintiff's vacuums to then introduce alternative vacuums. 6 N.Y.2d at 569–571. This conduct was unfairly competitive in part because, although plaintiff authorized certain uses of its name, the "scheme use[d] plaintiff's good name as a weapon against itself[.]" *Id*. at 569. Similarly, SeaWorld used Sesame's goodwill to draw consumers to Sesame Place, then used Sesame's good name to divert those customers to a non-Sesame park and misleadingly suggested Sesame approved of the diversion. AC ¶¶156–60. Many Sesame Place customers "have the Platinum pass because [their children] love Sesame Place" and found SeaWorld's actions to be a "spit in the face." *Id*. ¶95. This conduct plainly misappropriates Sesame's goodwill and devalues the trust Sesame has built in that brand for years. *See Ghost in the Machine Inc. v. Planned Parenthood Fed'n of Am., Inc.*, 22-CV-9270 (VSB), 2025 WL 252913 at *14 (S.D.N.Y. Jan. 21, 2025) (denying dismissal and noting goodwill can be misappropriated).

Sesame also provides ample allegations that this conduct was part of "a willful campaign to harm Sesame," detailing SeaWorld's pattern of retaliatory conduct following the arbitration, "including through actions that offered SeaWorld no economic benefit." AC ¶¶6–13, 157, 162.[3] Because the "essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another with an element of bad faith," Sesame successfully pled unfair competition based on diversion. *Fine Foods Intl. (N.Y.) v. N.A. Fine*

---

closed during popular holiday events, Sesame received a lower share of revenue from season pass sales because children and families had to use their Season Passes at non-Sesame parks in the area. *Id*. ¶96, ¶¶158–59.

[3] SeaWorld suggests that Sesame's diversion argument is inconsistent with the allegation that SeaWorld did not act in its economic self interest (and, thus, acted in bad faith). Mot. at 13. Not so. By closing Sesame Place San Diego early, both Sesame and SeaWorld lost the revenue they would have received from that park. SeaWorld could salvage some of its losses by diverting customers, but that does not necessarily mean diverting customers was to its economic benefit.

*Foods, Inc.*, No. 99-CV-1062 (ILG), 1999 WL 1288681, at \*12  (E.D.N.Y. Nov. 12, 1999).

***Market Exclusion/Brand Curtailment***: Sesame also alleges SeaWorld committed unfair competition by willfully trying to exclude Sesame from the theme park market and curtail the *Sesame Street* brand in "retaliation" for Sesame winning the arbitration. *See* AC ¶¶6–9, 48, 77, 91, 157–58, 161–62. After Sesame won the arbitration, SeaWorld shut down a Sesame-branded park, declined to promote the brand, replaced Sesame-themed attraction "with another brand" and held "discussions with other IP licensing partners to replace Sesame." *Id*. ¶160. Meanwhile, SeaWorld held a license it ***knew*** prevented Sesame from contracting with other theme park operators across a significant area.[4] *Id*.; *see also id.* ¶3. SeaWorld thus purposefully sought to limit Sesame's market presence in bad faith. *Id*. ¶¶6–13, 157. Such "wrongful exclusion" sufficiently states a claim for unfair competition. *See Prudent,* 722 F. Supp. at 23; *Airship Indus. (UK) Ltd. v. Goodyear Tire & Rubber Co.*, 643 F. Supp. 754, 762 (S.D.N.Y. 1986) (unfair competition claim survived where plaintiff asserted defendant "wrongfully prevented the expansion of [its] business").

### B.    SeaWorld's Argument that Sesame Did Not Allege the Elements of Unfair Competition Fails

Despite the foregoing, SeaWorld claims that Sesame failed "to plead the elements of Unfair Competition." Mot. at 14, 16. Its argument fails.

***First***, SeaWorld's argument rests on a misstatement of law. It suggests New York recognizes only "two theories of unfair competition: palming off and misappropriation." *Id*. at 14. As explained, although these are two common theories, the Second Circuit recognizes the "tort is adaptable and capacious." *Roy*, 672 F.2d at 1105. Courts in this circuit thus allow claims to proceed even where they do not allege misappropriation or palming off. *See, e.g.*, *Prudent*, 722 F. Supp. at

---

[4]    SeaWorld's territory for exclusivity was reduced to a specified radius from existing parks under Section 5.04(d). Dkt. 20-2 at 8. Even with its loss of nationwide exclusivity, SeaWorld retains exclusivity across several geographic areas that account for a large concentration of U.S. theme park attendance and revenue.

23 ("[F]ailure to allege misappropriation . . . is not grounds to dismiss an unfair competition claim where wrongful exclusion of a competitor from the market is alleged."); *Airship*, 643 F. Supp. at 762 (denying dismissal even though claim did not allege misappropriation). Indeed, even SeaWorld's own case reiterates that "the question of what is unfair competition in business must be determined with particular reference to the character and circumstances of the business." *Int'l News Serv. v. Associated Press*, 248 U.S. 215, 236 (1918).

**Second**, in any event, Sesame **has** alleged bad faith misappropriation. Under its **diversion argument**, Sesame alleges that after "abruptly" closing Sesame Place San Diego, SeaWorld used Sesame's IP without permission in the "announcement of the park closure" and in messaging encouraging consumers to visit SeaWorld instead. AC ¶¶157–59. It thus "misleadingly suggested that Sesame Workshop condoned or supported the closure" and diversion of its customers, thus harming Sesame's reputation with its customers who bought tickets to interact with Sesame-themed content, but were left empty-handed. *Id.* ¶159. Under New York law, this constitutes improper misappropriation and unfair competition. *Supra* at § II.A; *see Electrolux*, 6 N.Y.2d at 569–571; *Fine Foods*, 1999 WL 1288681, at *12.

SeaWorld's reliance on *Red Mountain Medical Holdings, Inc. v. Brill*, is unavailing. 563 F. Supp. 3d 159 (S.D.N.Y. 2021). There, the defendant did not actually **use** the plaintiff's IP; it "made misrepresentations about that information to dissuade their clients from investing[.]" *Id.* at 182. Thus, the "fact pattern [was] more descriptive of a claim for tortious interference[.]" *Id.* Here, Sesame alleges that SeaWorld **used** Sesame's IP and reputation to divert customers. AC ¶¶92–97.

SeaWorld's other efforts to discredit the diversion claim fail. It tries to recharacterize the claim as SeaWorld's use of **its own** property rather than its misuse of **Sesame's**. Mot. at 16. But while SeaWorld may have issued the park passes at issue, it did so using **Sesame's** brand, and the

9

passholders that SeaWorld diverted were part of ***Sesame's*** audience. *Id*. That Sesame regrettably licensed its IP to SeaWorld for certain uses does not preclude an unfair competition claim either, Mot. at 15–16, as SeaWorld's conduct is well outside the scope of permitted uses. *See Electrolux*, 6 N.Y.2d at 567 ("[T]hat plaintiff may be deemed to have allowed its trade name and mark to be employed by defendant" for some uses did not mean plaintiff "consented that its name and mark be used as a lure in a 'bait and switch' promotion."); *New York Racing Ass'n v. Nassau Reg'l Off-Track Betting Corp.*, 909 N.Y.S.2d 866, 868, 871 (Sup. Ct. 2010) (denying dismissal where defendant "misappropriated" simulcasts "despite knowing that it lacked authorization to do so" under the contract). Nothing in the Agreement allows SeaWorld to use Sesame's goodwill for the promotion of non-Sesame parks. *See* AC ¶38, Agreement §2.02 (describing licensed uses).[5]

***Third,*** with respect to wrongful exclusion, SeaWorld argues for dismissal because this claim does not involve the "taking of Sesame's property." Mot. at 16–17. But unfair competition does not require the taking of property. *See, e.g.*, *Prudent*, 722 F. Supp. at 23. SeaWorld cannot force elements of a misappropriation-based unfair competition claims onto wrongful exclusion.

***Lastly,*** SeaWorld's claim that Sesame relies "on conclusory terms sprinkled throughout its pleading" to establish bad faith grossly misrepresents the pleadings. Mot. at 12. Sesame in fact devotes ***eight*** of the first thirteen paragraphs in the Amended Complaint to explaining the "unilateral retaliation campaign" that SeaWorld mounted against Sesame after it won an arbitration award from SeaWorld. AC ¶¶6–13; *see also id.* ¶¶157–63 (additional paragraph alleging "willfulness" and "bad faith"). This bad faith retaliation campaign includes the conduct alleged as unfair competition. *Id.* ¶¶6–13. SeaWorld will be free, of course, to proffer evidence explaining

---

[5]    SeaWorld is also wrong that Sesame must allege confusion, as "[l]ikelihood of confusion by the public is not an essential element in a misappropriation-based unfair competition claim." *Sidney Frank Importing Co. v. Beam Inc.*, 998 F. Supp.2d 193, 209 (S.D.N.Y. 2014) (citation omitted). In any event, victims of SeaWorld's actions called the company's conduct "deceptive." *Id.* ¶74.

how its actions after Sesame won its arbitration award do not reek with the stench of bad faith. But courts have found allegations sufficient to allege bad faith based on far less. *See Allstate Life Insurance Company v. Mota*, 21-cv-908 (LJL), 2021 WL 5166819, at *5 (S.D.N.Y. Nov. 5, 2021) (allegations that defendant misappropriated name and goodwill to "steer customers to itself and away from" plaintiff were sufficient); *Express Gold Cash, Inc. v. Beyond 79, LLC*, 1:18-cv-00837 EAW, 2019 WL 4394567, at *9 (W.D.N.Y. Sept. 13, 2019) (citing one paragraph to find bad faith).

### C.    Sesame's Unfair Competition Claim Is Not Duplicative of Its Breach Claim

SeaWorld's other argument that "Sesame's unfair-competition claim cannot survive New York's deeply rooted independent-tort rule" because it is purportedly duplicative of Sesame's breach claim also fails. Mot. at 7, 12–13. Under the independent-tort rule, "[w]here the plaintiff and defendant are parties to a contract, and the plaintiff seeks to hold the defendant liable in tort, the plaintiff must prove that the defendant breached a duty 'independent' of its duties under the contract." *Carvel*, 350 F.3d at 16. The defendant "breach[es] an independent duty in tort if the defendant goes beyond a mere breach of the contract and acts in such a way that a trier of fact could infer that it willfully intended to harm the plaintiff." *Id*.

Such is the case here. The breach claims concern failure to make payments, AC ¶¶128, 136–37; releasing branded material without approval, *id*. ¶¶129–32; closing Sesame Place San Diego in violation of the requirement to maintain broad access to the park, *id*. ¶133; and failure to hold brand meetings with Sesame or provide it with required documents, *id*. ¶¶134–35. The unfair competition claim goes well beyond that and includes allegations that SeaWorld willfully harmed Sesame in violation of the duty of all businesses to not unfairly compete. *See Bard-Parker Co. v. Crescent Mfg. Co.*, 20 N.Y.S.2d 759, 762–63 (N.Y. Sup. Ct. 1940) (citation omitted) (companies have an "independent duty" to abide by "the rule of fair play," which "outlaw[s] all attempts to trade on another's reputation" and "protect[s] the buying public from deception").

11

Under the *diversion theory*, SeaWorld "did not merely close Sesame Place San Diego" or release materials without approval, but "diverted customers," "misleadingly suggested that Sesame Workshop condoned or supported the closure," and "falsely led consumers to blame" Sesame for the closure, all to harm Sesame. AC ¶¶92–93, 159–60. To be sure, Sesame's unfair competition claim would be redundant if Sesame claimed only that SeaWorld failed to seek permission before posting on social media and no further wrongdoing. Indeed, Sesame alleges other unauthorized posts that do not divert or mislead Sesame's fans solely as violations of the Agreement's explicit terms. *Id*. ¶130. But the facts underlying the diversion theory are different because Sesame alleges the use of its goodwill to intentionally hurt Sesame and misleadingly divert customers, a "species of commercial hitch-hiking which the law finds offensive, and, therefore, prohibits." *Bard-Parker*, 20 N.Y.S.2d at 762; *see also KT Grp. v. NCR Corp.*, 412 F. Supp. 3d 305, 332–35 (S.D.N.Y. 2013).

Similarly, under the *market exclusion and brand curtailment theory*, Sesame does not merely allege that SeaWorld closed or failed to open attractions without paying required fees or providing notice. It alleges SeaWorld intentionally limited Sesame's theme park exposure, limited promotional efforts, and entered "discussions with other IP licensing partners to replace Sesame" as part of an intentional and retaliatory scheme to harm Sesame. AC ¶¶3, 160. Thus, the conduct is not duplicative. In fact, SeaWorld itself admits that the Agreement does not prohibit it from speaking to new partners, Mot. at 17, so such conduct could not be duplicative of breach claim.

*Albemarle Theater, Inc. v. Bayberry Realty Corp.* is particularly apt. 27 A.D.2d 172 (N.Y. App. Div. 1967). There, defendant signed a contract requiring it to care for plaintiff's movie theater. *Id*. at 174. Plaintiff alleged that the defendant intentionally drove down the value of the plaintiff's theater to ensure that defendant's competing theater would prosper. *Id*. at 177. This "affirmative[], intentional[], and willful[]" conduct carried the plaintiff's "allegations far beyond

12

a mere assertion of conspiracy by the defendants not to carry out the contract." *Id*. at 174. Similarly, Sesame's complaint makes clear that SeaWorld's conduct was designed to harm Sesame and drive down the value of Sesame-themed parks. AC ¶157. It thus goes far beyond merely failing to fulfill the contract. *Albemarle Theater,* 27 A.D.2d at 177; *see also Reed Const. Data Inc. v. McGraw-Hill Companies, Inc.*, 745 F. Supp. 2d 343, 353 (S.D.N.Y. 2010) (citation omitted) (denying dismissal of unfair competition claim where defendant did "more than simply fail to comply with the terms of the agreement, but rather [took] affirmative steps to intentionally harm" the plaintiff).

SeaWorld's contrary conclusion depends on an illogical piecemeal approach that attempts to break its yearslong campaign of unfair and retaliatory conduct into discrete acts that it claims are duplicative of the breach claim. Mot. at 8–11. New York courts, however, find it "fruitless to examine each individual step in the scheme for actionable wrong" when Defendants' actions "so dependent upon one another that one can only say that its entirety is an unfair method of direct competition." *Electrolux*, 6 N.Y.2d at 571 (citation omitted). Instead, "[t]he true nature of the plan or scheme is revealed only when the various aspects are viewed as a totality.'" *Id.* When viewed in totality, the unfair competition claims are not duplicative for the reasons just discussed.

SeaWorld's largely paraphrased reliance on *Apotex Corp. v. Hospira Healthcare India Private Ltd.*, 18-CV-4903 (JMF), 2019 WL 3066328 (S.D.N.Y. July 12, 2019), *aff'd* 827 Fed. Appx. 149 (2d Cir. 2020), is similarly flawed. In *Apotex*, the plaintiff brought an unfair competition claim "based *entirely* on the same alleged conduct proscribed by contract[.]" *See id.* at *6 (emphasis added). Not so here. *See supra* § II.B. SeaWorld also ignores the repeated reminder in *Apotex* that "if an independent tort duty is present, a plaintiff may maintain *both* tort and contract claims arising out of the *same* allegedly wrongful conduct." *Id.* at *2 (emphases added). Thus, the court noted that if Apotex had included a "plausible allegation that Hospira 'acted in bad faith,'"

it could "state an unfair competition claim independent of its contract claim." *Id.* at *6. Because it did not, "the gravamen of its claims [were] a willful breach of the parties' contract[.]" *Id.* at *5. In contrast, Sesame alleges that SeaWorld enacted a bad faith campaign "specifically designed to harm the plaintiff." *See id.*; AC ¶162 ("SeaWorld sought to **deliberately harm** Sesame[.]").[6]

Lastly, SeaWorld's argument that the alleged damages are "identical for both claims" is wrong. Mot. at 14. For breach of contract, Sesame seeks unpaid royalties and termination fees. AC ¶138. Unfair competition, on the other hand, rests on different theories of wrongdoing that naturally lead to different damages. For example, when SeaWorld "misleadingly suggested" that Sesame condoned closure of Sesame Place San Diego, SeaWorld directly "tainted" Sesame's "brand and consumer relationships, as it falsely led consumers to blame Sesame Workshop for the closure[.]" *Id*. ¶159; *see also id.* ¶95. The contract's terms do not contemplate "the pain of having one's good will employed as a weapon in direct competition against one's self," but New York's unfair competition doctrine acknowledges this causes "substantial legal damage" to "good will and reputation" and is recoverable. *See Electrolux*, 6 N.Y.2d at 571–72. Similarly, the contract did not imagine that SeaWorld would so egregiously "conspire[] to . . . take away" Sesame's "customers" by misleadingly using its brand. *See Kathleen Foley, Inc. v. Gulf Oil Corp.*, 12 A.D.2d 644, 644 (N.Y. Sup. Ct. 1960). Under tort law, Sesame can "recover from defendants the profit

---

[6]    SeaWorld's argument that Sesame would rely solely on willfulness to "escape New York's independent-tort principle" is a strawman argument. Mot. at 12. Sesame does not simply allege willful breach of contract. It alleges that SeaWorld took extracontractual steps to intentionally harm Sesame and shut it out of the theme-park market. SeaWorld's cobbled together citation string is irrelevant. In *AXA Mediterranean Holding, S.P. v. ING Insurance International,* the duplicativeness argument involved breach of contract and breach of warranty. No. 652110/10, 2011 WL 10915622, at *7 (N.Y. Sup. Ct. 2011). *OFSI Fund II, LLC v. Canadian Imperial Bank of Commerce*, merely affirmed a lower court decision where the breach of contract claim was dismissed because the plaintiff failed to allege what explicit terms were breached. *See* No. 602353/05, 2009 WL 6019496, at *2 (N.Y. Sup. Ct. 2009). *My Mavens, LLC v. Grubhub, Inc.*, acknowledged the *Carvel* principle that a willful intention to harm the plaintiff establishes an independent tort, but explained that the plaintiff's allegations of bad faith relied on "a ladder of suppositions that fail the plausibility test." 20 Civ. 4657 (PGG), 2023 WL 5237519, at *23, 25 (S.D.N.Y. Aug. 14, 2023). Not so here. *Dormitory Authority of the State of New York v. Samson Construction Co.* did not deal with allegations of a willful intent at all; it dealt solely with a **negligence** claim, which, by definition, does not assert intentional harm. 30 N.Y.3d 704, 711–12 (N.Y. Ct. App. 2018).

14

lost on the customers diverted by them." *Id.* at 645; AC ¶163. SeaWorld's marketplace exclusion tactics also cut off opportunities for Sesame to increase exposure and further strengthen its goodwill. The unfair competition claim seeks recovery for this unique harm as well. AC ¶163.

In any event, even were the damages duplicative, this would not, in and of itself, render the ***claims*** duplicative. Instead, at most, duplicativeness in damages would merely limit Sesame's recovery. *See Lively v. Wayfarer Studios LLC*, 24-cv-10049, 2026 WL 905447, at *24 (S.D.N.Y. Apr. 2, 2026) (plaintiff "will have to 'elect to receive either tort or contract damages'" but plaintiff "need not forego one theory of recovery at this stage in order to pursue the other.").

### D.  The Agreement's Damages Clause Does Not Support Dismissal

Contrary to SeaWorld's assertions, the contract's damages provisions also do not require dismissal of the unfair competition claim. Despite its convoluted reference to *24/7 Records* and multiple contract provision, the crux of SeaWorld's argument is that the Agreements' limitation on liability clause precludes recovery for unfair competition and limits all damages to those explicitly itemized in the Agreement. Not so. Although limitations on liability are enforceable in ordinary breach of contract cases, "New York law … prohibits parties from limiting their liability for gross negligence or willful misconduct." *Patriarch Partners Agency Servs., LLC v. Zohar CDO 2003-I, Ltd.*, 16-CV-4488 (VM), 2025 WL 2592224, at *29 (S.D.N.Y. Sept. 8, 2025) (citations omitted); *see also IS Chrystie Mgmt. LLC v. ADP, LLC*, 205 A.D.3d 418, 419 (2022) ("an exclusion for willful conduct or gross negligence will be implied where a limitation on liability does not specifically provide for one"). The Amended Complaint is rife with allegations of SeaWorld's willful, retaliatory purpose. AC ¶¶6–13, 159, 162.

### III.  SESAME SUCCESSFULLY PLED BREACH OF THE IMPLIED COVENANT

"Implicit in every contract is a covenant of good faith and fair dealing which encompasses any promise that a reasonable promisee would understand to be included." *Elmhurst Dairy, Inc. v.*

*Bartlett Dairy, Inc.*, 97 A.D.3d 781, 784 (N.Y. App. Div. 2012). To plead breach of the implied covenant, a plaintiff must allege (1) a valid contract, (2) bad faith conduct, (3) that deprived the plaintiff of the benefit of the bargain, (4) causing damage. *Id.* "In the context of agreements granting exclusive promotional or licensing rights, the promotor or exclusive licensee impliedly promises to use reasonable efforts to generate profits for the performer or licensor." *Don King Prods., Inc. v. Douglas*, 742 F. Supp. 741, 767 (S.D.N.Y. 1990); *see Wood*, 222 N.Y. at 90–92. Courts recognize that implied-covenant claims flows from "subtle" distinctions with the facts supporting breach of contract. *Taco, Inc. v. Am. Home Assurance Co.,* 24-CV-07041 (JAV), 2025 WL 2419707, at \*6 (S.D.N.Y. Aug. 21, 2025). An implied-covenant claim is not duplicative when it "alleges conduct that is separate from the conduct constituting the alleged breach of contract and such conduct deprived the other party of the benefit of the bargain." *AEA Middle Market Debt Funding LLC v. Marblegate Asset Man., LLC*, 214 A.D.3d 111, 133 (N.Y. App. Div. 2023).

Sesame satisfies each element. For the ***first***, Sesame alleges the existence of an exclusive licensing contract. AC ¶¶1–4. For the ***second***, numerous allegations show SeaWorld acted in "bad faith to intentionally harm Sesame[.]" *Id*. ¶91; *see also id*. ¶¶8–13, 91, 146, 151. "Bad faith" only requires "more than ordinary negligence but less than a showing of dishonest motives." *Ace Am. Ins. Co. v. Cons. Edison Co. of N.Y., Inc.*, 190 N.Y.S.3d 667, 2023 WL 4191164, at \*4 (N.Y. Sup. Ct. 2023). SeaWorld's purposeful retribution campaign easily meets this standard. *See id.* at \*3 (bad faith alleged where insurer "knew of a defense to coverage" but waited "years" to assert it; bad faith requires "less than a showing of dishonest motives"); *Don King*, 742 F.Supp. at 767.

As to the ***third element***, Sesame alleges SeaWorld "failed to work in good faith to achieve [the] stated goal of the Agreement, and has instead, in deliberate retaliation for having to pay the arbitration award, took efforts to diminish the exposure of the *Sesame Street* brand and value of

16

the parks, attractions, and products licensed under the Agreement in a willful effort to deprive Sesame Workshop of the fruits of the Agreement." AC ¶146. It also alleges SeaWorld deprived Sesame of the implied promise of good faith by driving down Sesame's revenue and brand exposure. *See, e.g., id.* ¶¶98, 148 (sought to, and did, replace Sesame IP); *id.* ¶149 (stopped using good faith efforts to promote Sesame-licensed products, deliberately reducing royalties).

And for the ***fourth element***, damage, the Amended Complaint makes clear that SeaWorld's bad-faith, intentional, and unfair acts "diverted revenue from Sesame," "depriv[ed] Sesame Workshop of anticipated royalty revenue and hurt[] [its] reputation with consumers planning to visit *Sesame Street*-themed parks." *Id*. ¶¶97, 100. These financial and reputational harms are cognizable damages under an implied-covenant claim. *See Don King*, 742 F.Supp. at 768 (noting that defendant's alleged breach of the implied-covenant harmed plaintiff's opportunity for reputational "status and money awards" that were "inseparable from the [] contracted-for benefit").

SeaWorld seeks to dismiss the implied-covenant claim as "duplicative," arguing that "[e]ach predicate act pleaded as a breach of the implied covenant is pleaded elsewhere . . . as the breach of an express provision—save for one allegation." Mot. at 19. This argument is flawed.

***First***, it simply does not matter whether the claim is duplicative because, even if duplication exists, Sesame pleads the claim in the "alternative." AC ¶154. SeaWorld's position that this renders the claim "defect[ive.]" is wrong. Mot. at 20–21. New York law recognizes that "a claim for the breach of the implied covenant of good faith and fair dealing may be brought in the alternative to a claim for a breach of contract where there is a dispute over the existence, scope, or enforceability of the putative contract." *Saggio v. Select Portfolio Serv., Inc.*, No. 15-cv-04300 (JG)(RER), 2015 WL 6760132, at *5 (E.D.N.Y. Nov. 5, 2015) (cleaned up); *see also Spinelli v. NFL*, 903 F.3d 185, 206 (2d Cir. 2018) ("no reason to bar . . . both types of claims in the alternative"

17

if contract terms are disputed). SeaWorld's own motion shows that there are several such disputes. *See, e.g.*, Mot at 8–9 (claiming no breach liability for closing the San Diego park); *id.* at 22–25 (arguing no contract with United); *id.* at 21 (arguing Agreement forecloses "tort" recovery).

**Second**, in any case, the allegations are not duplicative. For example, Sesame alleges SeaWorld's transition of the San Diego location to a seasonal schedule was a bald attempt to "limit[] the amount SeaWorld would owe Sesame Workshop in termination fees should Sesame Workshop be forced to terminate [the license]." AC ¶147. SeaWorld may claim the right to close a park seasonally but exercising that right in **bad-faith retaliation** to mitigate losses from its own breaches violates the implied covenant. *See Don King*, 742 F.Supp. at 767.

The same holds for Sesame's allegations that SeaWorld "actively sought out new IP licensing partners to replace Sesame" and "stopped using good faith efforts to promote" licensed products. AC ¶148. These acts violate the implied covenant because SeaWorld purposely engaged in them "to reduce [the] amount in royalties that Sesame Workshop receives." *Id.* ¶149. And they are not duplicative. SeaWorld **admits** that discussions with other IP partners are **not** alleged as breaches. Mot. at 21. Nor is SeaWorld's scaling back on brand promotion an alleged breach.[7]

SeaWorld only reaches its "duplicativeness" conclusion through a misreading of law. It argues that if any fact supporting the implied covenant claim relates to obligations under the Agreement, the claim is duplicative. Mot. at 19. This makes no sense. Every implied covenant claim, by definition, relates to an underlying agreement. Thus, courts have found these claims non-duplicative "even when there may be 'some overlap in the facts," provided the claims also rely on "different factual allegations and seek different damages." *Taco*, 2025 WL 2419707, at *4 (rejecting duplicativeness argument where "allegations suggest a potential intentional subversion

---

[7]    Tellingly, SeaWorld merely alleges that this scaling back "runs into a remedy that the parties negotiated" because the Agreement has a minimum payment for licensed products. Mot. at 20.

of the contract . . . as opposed to a failure to execute the terms of the contract"). Such is the case here. *Supra* § II.C; *see AEA Middle Market*, 214 A.D.3d at 133 (rejecting duplicativeness argument where plaintiff "alleges more than" the facts required to prove a breach of express terms).

**Third**, damages are not duplicative either. The breach-of-contract claim seeks damages for SeaWorld's breaches of explicit contract terms and enforcement of the payment provisions in the contract, "including all unpaid sums and expenses owed with interest," the "associated termination fees under Section 16.02," and "any other monetary relief this Court deems appropriate." AC ¶¶138–39. The implied-covenant claim, however, seeks damages from acts that are not explicit breaches—such as SeaWorld's failure to "use good faith efforts to promote the *Sesame Street* brand" and its decision to "intentionally . . . drive the potential value of the licensed parks and products down[.]" *Id.* ¶¶150. These damages include what the royalties and termination fees **would have been** had SeaWorld not deliberately driven those amounts down.[8]

**Fourth**, SeaWorld's argument that the claims are duplicative because "[t]he 'fruits' of which Sesame claims to have been deprived—royalties, brand exposure, and termination fees—are not implied benefits" is illogical and, tellingly, unsupported by law. An implied-covenant claim does not require violation of an **implied benefit** of the contract; it requires violation of an **implied promise** that helps the parties achieve the benefits **contemplated by the contract itself**. Indeed, the doctrine exists to "ensure[] that parties to a contract perform the substantive, bargained-for terms of their agreement and that parties are not unfairly denied **express, explicitly bargained-for benefits.**" *Don King*, 742 F. Supp. at 767 (internal quotation marks and quotation omitted) (emphasis added). That Sesame receives royalties under the contract is exactly why SeaWorld's choice to unilaterally and intentionally **decrease** those royalties violates the implied covenant.

---

[8]    SeaWorld fails to explain how punitive damages for the implied-covenant breach are the "same" as those for unfair competition, nor does it state why that is relevant to duplication between express and implied breach claims.

19

**IV.    SESAME SUCCESSFULLY PLED PUNITIVE DAMAGES**

Punitive damages exist "not only to punish the defendant but to deter him, as well as others who might otherwise be so prompted, from indulging in similar conduct in the future" *Walker v. Sheldon*, 10 N.Y.2d 401, 404 (1961). Sesame seeks punitive damages for both unfair competition and breach of the implied covenant of good faith and fair dealing. AC ¶¶153, 163. SeaWorld's attempt to dismiss Sesame's punitive damages request should be denied.

**Unfair Competition:** For an ***unfair competition*** claim, "New York law clearly permits punitive damages where a wrong is aggravated by recklessness or willfulness." *Getty Petroleum Corp. v. Island Transp. Corp.*, 878 F.2d 650, 657 (2d Cir. 1989) (cleaned up). The Amended Complaint contains myriad allegations of SeaWorld's deliberate, bad-faith and persistent attempts to harm Sesame that, when proven true, will "clearly" entitle Sesame to punitive damages under New York law. *See Getty*, 878 F.2d at 657; *see, e.g.*, AC ¶¶6–13, 91, 157, 158–62. Thus, Sesame adequately alleges entitlement to punitive damages.

SeaWorld's arguments fail. ***First,*** it asserts that the limitation on liability clause in §17.03 shields it from liability. Mot. at 21. SeaWorld is wrong. As discussed above, such provisions are unenforceable in tort actions where conduct is willful or done with gross negligence. *Supra* § II.D.

***Second***, it argues that Sesame must allege facts sufficient to satisfy the four factors in *New York Univ. v. Continental Ins. Co.* to obtain punitive damages, namely, (1) an independent tort, (2) egregious tortious conduct, (3) directed to plaintiff, and (4) a pattern directed at the public. Mot. at 22 (citing 87 N.Y.2d 308, 316 (1995)). But as the Second Circuit has explained:

> New York courts have applied the "public harm" standard only to cases in which the defendant's allegedly tortious conduct was directly related to the contract between the plaintiff and defendant. That is, the typical fact pattern in which New York courts apply this standard is where the plaintiff claims that the defendant fraudulently misrepresented something about the contract between the two.

*Carvel,* 350 F.3d at 25. Otherwise, courts allow punitive damages claims in unfair competition

20

cases without a showing of public harm. *Getty*, 878 F.2d at 657 (in unfair competition case, punitive damages may be awarded "whether or not" conduct was "directed against the public generally."). This is true even in cases involving both unfair competition and breach of contract. For instance, in *24/7 Records, Inc. v. Sheridan Square Entertainment, LLC*, on which SeaWorld relies, Mot. at 18, the claim for punitive damages from unfair competition survived summary judgment without ***any*** discussion of public harm, even as the court precluded punitive damages for breach of contract due to a lack of public harm. 566 F. Supp. 2d 305, 321 (S.D.N.Y. 2008). Similarly, in *Wrap-N-Pack, Inc. v. Kaye*, the court stated the public-harm element is unnecessary when, for example, a defendant "misappropriate[s]" "intellectual property and other business data . . . to divert sales"—even if an employment agreement established the relationship between the parties. 528 F. Supp. 2d 119, 124–25 (E.D.N.Y. 2007). Other cases, too, do not require or discuss public harm even where the plaintiff asserts both unfair competition and breach. *See, e.g.*, *Mobius Man. Sys's., Inc. v. Fourth Dimension Software, Inc.*, 880 F. Supp. 1005, 1027, n.14 (S.D.N.Y. 1994) (unfair competition claim supported punitive damages because of "the degree of intentional conduct and bad faith exhibited" in case where breach of contract also alleged).

Here, Sesame does not allege that SeaWorld fraudulently misrepresented the terms of the parties' contract. It alleges misleading use of Sesame's IP to divert consumers and purposeful prevention of Sesame from fully participating in the theme park market. Even absent a contractual relationship, SeaWorld would have no right to misappropriate Sesame's IP, misleadingly divert customers, or block SeaWorld from the theme park market. Thus, the punitive damages claim is appropriate even without establishing the public harm element. *Getty Petroleum*, 878 F.2d at 657.

Sesame also satisfies all four *NYU* elements, including public harm. The unfair competition claim asserts conduct above and beyond mere breach of contract, and thus ***element one's***

21

independent tort requirement is met. *Supra* § II.C. For ***elements two and three***, SeaWorld tellingly does not dispute these elements. Mot. at 21–22. Nor could it, as the Amended Complaint alleges that SeaWorld directed egregious conduct toward Sesame by misusing its IP to mislead the public, divert consumers, and limit SeaWorld's ability to compete in the theme park mark. *Supra* § II.A.

As for the ***final element***, New York courts find a defendant engages in a public-directed pattern of misconduct when "the deception practiced in selling" is "aimed at the ultimate consumer." *See, e.g.*, *Getty*, 878 F.2d at 657. Such is the case here. SeaWorld used Sesame's IP to mislead consumers and cause them to blame Sesame for the closure of the San Diego park. *Supra* § II.A. Further, customers who bought passes "offer[ing] admission to only Sesame Place San Diego" and "primarily intended to use the passes to engage with *Sesame Street*-themed content" were targeted and harmed by SeaWorld's misleading, unfair and bad-faith conduct. AC ¶95. As the Amended Complaint details, those customers found SeaWorld's "deceptive" conduct "upsetting" and "very disappointing." *Id*. ¶74. SeaWorld's willful effort to block Sesame from fully participating in the theme park market also hurts the public, as consumers excited to visit Sesame parks and interact with the brand were denied the opportunity due to SeaWorld's tactics. *See id*. ¶¶74, 95. Thus, the punitive damages claim for unfair competition should not be dismissed.

**Implied Covenant:** The punitive damages claim arising from SeaWorld's breach of the implied covenant should survive a motion to dismiss for similar reasons. Again, the limitation on liability clause is unenforceable given SeaWorld's gross negligence and/or willful disregard. *Patriarch Partners*, 2025 WL 2592224 at *29. Sesame also pleaded all elements under *NYU.*

On ***element one***, "alleged breach of the implied covenant of good faith and fair dealing may provide the basis, as an independent tort, for a claim for punitive damages." *JD Produce Maspeth LLC v. State Farm Fire & Cas. Co*, 23-CV-6637 (NGG)(LB), 2024 WL 5630618, at *3

22

(E.D.N.Y. Nov. 19, 2024); *see also New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 315–16 (1995) ("[W]here a party engages in conduct outside the contract but intended to defeat the contract, its extraneous conduct may support an independent tort claim."). For ***elements two and three***, SeaWorld does not dispute that Sesame alleges egregious conduct directed at it. *E.g.*, AC ¶¶5–14, 91–100, 147–51, 157–63. For ***element four***, SeaWorld used bad-faith tactics to close a park and deprive the public of access even ***after*** the public had already purchased tickets. *Id.* ¶¶73–74, 92–97, 147–51. This violates the implied covenant, *supra* § III, and harms the public. *Id*. ¶95.

## V.    UNITED IS A PROPER DEFENDANT FOR ALL CLAIMS

Defendants seek to dismiss United from all claims. As an initial matter, Defendants offer no arguments for dismissing United from the unfair competition claim, aside from their general arguments about this claim discussed above. Nor could they, as Sesame alleges that ***both Defendants*** participated in the unfair, bad faith acts that give rise to the unfair competition tort. AC ¶¶157–64. Indeed, the Amended Complaint, on its first page, states that the defined term "SeaWorld" refers to both United and SeaWorld Parks, *Id.* at 1, meaning that all allegations against SeaWorld apply equally to United. Thus, there is no basis for dismissing this claim.

SeaWorld's attempt to dismiss United from the remaining claims also fails. It is black-letter law that "a contract need not be signed in order to be enforceable when a party's conduct is such that it evinces an intent to be bound." *Rivera v. Home Depot USA, Inc.*, 776 Fed. Appx. 4, 6–7 (2d Cir. 2019). Under New York law, "a parent company can be held liable as a party to its subsidiary's contract if the parent's conduct manifests an intent to be bound[.]" *Horsehead Indus., Inc. v. Metallgesellschaft AG*, 239 A.D.2d 171, 171–72 (N.Y. App. Div. 1997). Such intent "is inferable from . . . the parent's participation in the negotiation of the contract[.]" *Id.*

The Amended Complaint alleges facts sufficient to show United's intent to be bound. As paragraph 126 states, "at least one officer of Defendant United Parks & Resorts, Marc Swanson,

participated in the negotiation of the Agreement." AC ¶126. This alone satisfies *Horsehead*, 239 A.D.2d at 172; *see also Powerbox (USA), Inc. v. Honeywell Int., Inc.*, Case No. 20-cv-3638-VM, 2020 WL 6151491, at *3–4 (S.D.N.Y. Oct. 20, 2020) (company fairly included where "representatives were involved in negotiating" the contract).

United then confirmed its intent to be bound by acting upon the Agreement's mutual mediation clause. The Agreement contains an extensive dispute resolution process that includes the option to initiate mediation. AC ¶¶108–15. United exercised this option by "submit[ing] a request to JAMS initiating mediation for the Agreement under its own corporate name[.]" *Id.* ¶126. United's counsel acknowledged at the pre-motion conference that he submitted the form on behalf of United and that "United was aware of it[.]" Dkt. 36 at 17:1–18:22. This further shows that United believed it was bound by the Agreement and behaved accordingly. And because "[i]mplicit in every contract is a covenant of good faith and fair dealing," *Elmhurst*, 97 A.D.3d at 784 (citation omitted), Sesame properly named United in the implied covenant claim as well.

SeaWorld's arguments that the contract claims against United should be dismissed fail. ***First***, SeaWorld claims that the allegations regarding United's involvement in negotiations lack necessary detail. Mot. at 29–30. But the Amended Complaint explicitly states United's "officer" Mark Swanson "participated in the negotiation of the Agreement." AC ¶126. That participation is alone enough. *See, e.g.*, *Powerbox*, 2020 WL 6151491, at *3–4. Given the overlap between United and SeaWorld Park, the Amended Complaint also defines the two "collectively," and thus asserts extensive allegations regarding United's conduct and breach.

***Second***, SeaWorld argues that "the mediation allegation" cannot establish United's intent to be bound because "it is temporally incapable of supporting the inference." Mot. at 25. This is twice wrong. As to temporality, SeaWorld's ignores that, under New York law, the "subsequent

conduct of the parties may be used to indicate their intent to be bound." *Bitter v. Renzo*, 971 N.Y.S. 2d 69, 2012 WL 7856951, at *10 (N.Y. Sup. Ct. 2012) (parties may have established oral contract based on defendant's subsequent acts). Indeed, New York courts regularly consider the "parties' course of performance as the best evidence of the intent of the parties to a contract, finding that such post-contract conduct is highly probative of the parties' state of mind at the time the contract was signed" when presented with ambiguities. *Trireme Energy Holdings, Inc. v. RWE Renewables Ams., LLC*, 757 F.Supp.3d 445, 487 (S.D.N.Y. 2024) (cleaned up and quotation omitted).

*Third*, SeaWorld's case law does not help it. In *World Wide Packaging, LLC v. Cargo Cosmetics, LLC*, the complaint was "*silent* on how the business relationship between plaintiff and the subsidiary defendants" evolved and contained "no allegation about who negotiated" terms. 144 N.Y.S.3d 41 (N.Y. App. 2021) (emphasis added). In contrast, Sesame alleges United's own CEO participated in negotiations and that United later recognized its relationship to the Agreement by starting mediation. AC ¶126. SeaWorld also relies on a fragment of dicta from *Brown Bros. Electrical Contractors v. Beam Construction Corp.*, 41 N.Y.2d 397, 400 (N.Y. App. Ct. 1977) to argue that merely asserting that United's CEO "participated" in negotiations is insufficient. Mot. at 24–25. But *Brown* followed a "trial" where the court "received oral as well as written evidence." 41 N.Y.2d at 399. It thus says nothing about a plaintiff's burden at the pleading stage.

*Fourth*, if this Court finds the allegation against United (or any allegations) insufficient, it should allow Sesame the opportunity to amend. *See* Fed. R. Civ. P. 15(a)(2); *Hi Bar Cap. LLC v. Getter*, 22-CV-1743 (ENV)(RML), 2025 WL 2989120, at *8 (Oct. 12, 2025) (granting leave to amend where party "could 'allege additional facts that would support'" its claim).

## CONCLUSION

For the foregoing reasons, Sesame respectfully requests SeaWorld's motion be denied. In the alternative, it requests leave to further amend its claims to address any defects in the pleading.

25

Dated: July 17, 2026

*/s/ Dale M. Cendali*
_____
Dale M. Cendali
Mary Mazzello
Alexandra Cunningham
Christopher Washington (*admission application forthcoming*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-6460
dale.cendali@kirkland.com
mary.mazzello@kirkland.com
alexandra.cunningham@kirkland.com
christopher.washington@kirkland.com

*Attorneys for Plaintiff Sesame Workshop*

26